## ALABAMA, The, (SMITH v.)

[See Smith v. The Alabama, Case No. 12,998a.]

---

## Case No. 124.

### In re ALABAMA & C. R. CO.

[9 Blatchf. 390;[1] 6 N. B. R. 107; 5 Amer. Law T. Rep. 76; 6 Amer. Law Rev. 577.]

Circuit Court, S. D. New York. Feb. 1, 1872.[2]

INVOLUNTARY BANKRUPTCY—ACT MARCH 2, 1867—JURISDICTION — FOREIGN RAILROAD CORPORATION.

1. A proceeding in voluntary bankruptcy, under section 39 of the bankruptcy act of March 2d, 1867, (14 Stat. 536,) may be prosecuted in the district in which the debtor has carried on business for the requisite time specified in section 11 of that act, although he resides and may be found in another district.

2. A railroad company, incorporated by the laws of a state, for constructing and operating a railroad, cannot be proceeded against, in bankruptcy, in a district court without the state or states where its railroad is, or is to be, built, maintained and operated, on the petition of a creditor, charging an act of bankruptcy.

3. Allegation and proof that such company kept an office in such district for six months next preceding the filing of the petition, where its officers acted and its board of directors met, and where it contracted debts and made loans, purchases and payments, do not give such court jurisdiction.

4. The business of a railroad company, within the meaning of the eleventh section of the said act, can only be carried on where the railroad is, or is to be, constructed, maintained and operated.

5. Hence, the district court for the southern district of New York has no jurisdiction to adjudge an Alabama railroad corporation a bankrupt, on the petition of a creditor.

In bankruptcy.

Clarence A. Seward, for railroad company.
Enoch L. Fancher, for creditor.

WOODRUFF, Circuit Judge. On the petition of a creditor, the respondent, a corporation created and organized under and by virtue of the laws of the state of Alabama, and owning and operating a railroad in the states of Alabama, Georgia, Mississippi, and Tennessee, was summoned to appear in the dis-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Reversing an unreported decree of the district court.]

trict court for the southern district of New York, to show cause why such corporation should not be adjudged a bankrupt. It was alleged in the petition, that the corporation owned property in the state of New York, and had, for the longest period of time within the six months next immediately preceding the date of the filing of the petition, had its principal office, place of business, and domicil in the city of New York, in which the corporation had transacted the ordinary moneyed, commercial and financial business of a railroad corporation.

The corporation pleaded or answered specially to this petition, that the district court for the southern district of New York had no jurisdiction to proceed against the said corporation, upon such petition, or to make any adjudication in bankruptcy against the respondent. After taking proofs touching the carrying on of the business alleged in the petition, by the respondent, within the said southern district of New York, this plea was overruled, and the district court then proceeded to adjudge. and did adjudge, the said corporation a bankrupt. The respondent, the corporation, now seeks a review and reversal · of that adjudication; and it was stated by counsel, on the argument, that the question to be considered on the review is this: Had the district court jurisdiction to proceed against this railroad corporation, upon a petition in invitum, because such corporation transacted, within this district, the business alleged in the petition in this case?

If I were charged with the duty of legislating upon this subject, I should hesitate long before I exposed a corporation incorporated in Alabama or California, for the construction of a railroad in those states, and for maintaining and operating the same there, to a proceeding in a distant district, for the settlement of its affairs, the disposal of its property, and the distribution of the proceeds, (operating practically as a dissolution ·thereof,) as a bankrupt. It would seem to me most inconvenient and disadvantageous to its creditors, most unsuitable, though not wholly impracticable, in respect of the closing of the estate, collecting, managing, and disposing of the assets, and transferring them, under the direction of the court, which ought to be conveniently accessible to all who are interested, needlessly, but inevitably, most expensive, and, presumptively, bringing the parties ultimately interested in its affairs, whether as creditors or stockholders, to a great distance, to protect their respective interests, following to this district the proceeds of the railroad and its equipment, which might well be administered at home. Difficulty will ordinarily exist, also, in effectively reaching the officers, to compel their furnishing accounts and details which the law requires for the settlement of the estate; and, even if they can be compelled to send such information here, or to attend here in person to give it, this must be needlessly expensive, troublesome and vexatious, and, in case of resistance, will, in general, be very unsatisfactory in the mode of proceeding, and in its results. Presumptively, at least, the property of such a corporation is invested in its railroad, and its equipment, and means of conducting the business for which it was incorporated, which are in the state or district where its railroad is built and is to be operated, under its charter; and it seems to me wholly unfit, that the district court for the southern district of New York should have the duty imposed upon it, of administering the affairs of such a distant corporation. When the fact is recalled, that, probably, no railroad company exists in the United States, which does not habitually transact some business in the city of New York, the burthen and inconvenience of such a jurisdiction, liable to be invoked by any one creditor, on a charge of bankruptcy, becomes apparent, to a degree that makes it incredible that such a jurisdiction, and the consequent duty to exercise it when invoked, have been imposed upon that court.

It is, however, no part of the duty of this court to legislate, but only to ascertain and apply the law as it is; and these suggestions can serve no purpose, unless they shall aid in interpreting the statutes under which the proceedings have been instituted, and which are claimed to sustain them.

The 48th section of the bankrupt law of March 2d, 1867, (14 Stat. 540,) declares, that the word "person," in that law, shall include "corporation." This must, of course, be qualified, in any of the provisions which are necessarily inapplicable to a corporation, and by any provisions that are specially and expressly made for corporations only, if any such there be. But, in respect of the question now before me, I find no such qualification, either express or implied, since no claim is made that the language of the 37th section of the act prevents its application to a railroad corporation, as has sometimes been contended. The 11th section, providing for voluntary bankruptcy, may, therefore, be read as if the words "moneyed, business or commercial corporations and joint stock companies" were inserted therein, and it will then provide, that such corporation, owing debts, * * * may apply by petition, addressed to the judge of the judicial district in which such debtor has resided or carried on business for six months, or for the longest period during the six months, next immediately preceding the time of filing such petition; and jurisdiction is given to proceed, on such petition, to adjudge the petitioner a bankrupt. Nevertheless, it is clear, that a corporation can have no residence out of the state by whose laws it was created, and that, therefore, in virtue of residence, no jurisdiction can be acquired by any district

court outside of such state. And, in construing the words "carried on business," it may be proper to consider what, as applied to a corporation, they reasonably import. Again, the 37th section declares, that, upon the petition of any creditor or creditors of such a corporation as is therein mentioned, * * the like proceedings shall be had and taken as are, in the act, afterwards provided in the case of debtors. This, in terms, subjects the corporations named to a proceeding in invitum for an adjudication of bankruptcy, as fully as other debtors are subjected thereto by the subsequent provisions of the act. Following the act to its subsequent provisions, we find, that, by section 39, any person—and, of course, any such corporation as is before mentioned—who commits any of the acts specified, shall be deemed to have committed an act of bankruptcy, and, subject to the conditions thereinafter prescribed, shall be adjudged a bankrupt, on the petition of one or more of his creditors, &c.

Neither in the 37th nor the 39th section, nor in any other section relating to involuntary bankruptcy, is there any express designation of the judge or court to whom the petition shall be presented, or who shall have jurisdiction thereof. The first section of the act makes the several district courts of the United States courts of bankruptcy, and confers on them jurisdiction in all matters and proceedings in bankruptcy, in their several districts. In which of the district courts, then, may proceedings be taken by a creditor, whether against a corporation or an individual? No express terms of the statute give an answer to this question. Certainly, it ought not to be open to creditors, or to a creditor, to select any district court of the United States, at his or their option. It must be such court as, upon the general rules governing the jurisdiction of the district court, can acquire jurisdiction, or such court as may seem to have been intended by congress, in analogy to the jurisdiction given where the proceedings are voluntary. The latter would seem to be the generally received opinion; and, in this district, it has, I believe, been the practical construction of the act. The act having assimilated the proceedings in involuntary bankruptcy, after the respondent has been adjudged a bankrupt, to the proceedings in voluntary bankruptcy, it is not unnatural to infer, that, when congress, by the 39th section, authorized an adjudication upon the petition of a creditor, they meant, upon a petition addressed to the court which, by the previous 11th section, was authorized to adjudge a debtor a bankrupt on his own petition. The supreme court of the United States, in framing the sixteenth of the general orders in bankruptcy, seem to have acted upon this construction of the act, in providing for the contingency of two or more petitions against the same individual, in different districts.

My own unaided examination of the act would have suggested the doubt, whether, although congress had given to the debtor the opportunity to apply to the court of the district wherein he resided, or to the court of the district in which he carried on business, they had not, when they provided for a hostile proceeding against him, intentionally omitted a similar provision, and, in that respect, intended that the proceeding should conform, by analogy, to the 11th section of the judiciary act of September 24th, 1789, (1 Stat. 78, 79,) which forbids that any civil suit shall be brought, in either the district or the circuit court, by original process, against an inhabitant of the United States, except in the district whereof he is an inhabitant, or in which he may be found when served with process. All the provisions of the act concerning involuntary bankruptcy may be harmonized with this construction. If he reside within the district then he may be served personally, or by leaving at his place of abode; or, if he have absconded, or be concealed, or his place of residence cannot be ascertained, then by publication, (section 40.) Although it was the design of congress to enable creditors to compel a debtor who has committed an act of bankruptcy to do that which, in a state of insolvency, he ought to do voluntarily, agreeably to the 11th section, it does not follow that they intended to enable creditors, or a creditor, to call the debtor, on a charge of having committed such an act, thousands of miles from his residence, to contest the charge, merely because he had carried on some business at such remote point. The great hardship of such a call is manifest: and the general tenor of the 40th section indicates, that it is where the debtor resides that the proceeding is, in general, to be conducted, his not being found, by reason of his absconding, or being concealed, or having no known residence, being the excepted cases of service by publication. It does not occur to me that there is any greater fitness or propriety in compelling an alleged debtor to go to a remote district to contest, in the court of bankruptcy, the claim of, or the alleged indebtedness to, a pretended creditor, as well as the truth of the charge of bankruptcy, (for both of these may be involved in the litigation,) than there is in compelling such supposed debtor to go to a remote district to defend an ordinary suit by the same party, under precisely the same circumstances, which, by the judiciary act, is expressly prohibited; and, there being no express provision of the bankrupt law to this effect, I should have been reluctant to indulge in construction not necessarily required by what is expressed, so as to produce a result quite in conflict with the former law. In view of the general construction given to the act, and the sanction such construction has received from the deliberate action of the supreme court of the United States, I do not feel at liberty to dispose of

this case by giving weight to the doubt which I have thus expressed. I must yield that doubt and hold, until otherwise advised, that a proceeding in involuntary bankruptcy may be prosecuted in the district in which the debtor carries on business, although he resides and may be found in another.

The further conclusion above stated—that a corporation included in the provisions of section 37 is in the like condition, in this respect, as a natural person—leaves only one question open—When applied to a railroad corporation, what do the terms, "in which such debtor has resided or carried on business," mean?

(1.) A corporation has, and can have, no residence, except in the state by whose laws it exists. It cannot, of its own mere motion, change its residence. This has often been decided by the supreme court. This is claimed here by the counsel for the corporation, and it is conceded by the counsel for the creditor. Hence, also, it is well settled, that a corporation created by the laws of one state, cannot be found in another judicial district of the United States, to be served with process, through its officers, in an action in the federal courts of such last-named district. Jurisdiction for the district court cannot, therefore, be maintained in this case on the ground of residence of the debtor, nor on the ground that the debtor, being a corporation under the laws of Alabama, was found in this district.

(2.) Do the facts here show that the corporation, the alleged debtor, carried on business in this district, within the meaning of the said eleventh section of the bankrupt law? In its broadest sense, the term "business" includes nearly all the affairs in which either an individual or a corporation can be actors. Indulgence in pleasure, participation in domestic enjoyment, and engagement in the offices of merely personal religion, may be exceptions, in the case of an individual. But the employment of means to secure or provide for these would, to him, be business; and, to a corporation, these exceptions can have no application. The conduct of any and all of the affairs of a corporation is business. Does, then, the doing of any acts whatever pertaining to the affairs of a railroad corporation constitute "carrying on business," in the sense of the act? Has the term, "carrying on business," the same meaning as "transacting any of its business"? If the necessities or interests of a railroad company require that an agent should be sent to a timber region to purchase or otherwise procure (e. g., by cutting, sawing, &c.) materials for its superstructure, is that carrying on business there? If it send an agent or agents to a city, the centre of capital, to negotiate its bonds and raise money in aid of the construction of its road, and such agency be continued for that purpose, and for receiving subsequent remittances and making payments of interest or other indebtedness, at an office provided therefor, is that carrying on business in such city, within the meaning of the act? I am constrained, not only by considerations already suggested, but by what, upon the words themselves, should be deemed their proper interpretation, to answer these questions in the negative. There are, in the carrying on of a business, many affairs which are merely incidental, and which may be, and often are, transacted elsewhere than at the place where the business—that which is the real design and purpose or object in view—is located; and such transactions may be of such frequent, or even daily, occurrence as to require an agency of considerable duration. It would seem to me greatly unjust and unreasonable to regard such transactions as a carrying on of business, in the sense of the law. "Carrying on business" looks to the scheme and purpose to which such transactions tend, and not to the incidental transactions themselves. Thus, the business of a railroad corporation is, by its charter, the construction, maintenance, and operation of a railroad. That is its business. In aid thereof, it may be necessary or expedient to employ agents and agencies—since it can only act by agents—in other places than those in which its business of constructing, maintaining, and operating the road can be done. But, the transactions of such agents are only collateral or incidental. They do not, in a just sense, constitute the business of the railroad company. That business cannot be removed. The company itself cannot transfer it. Agents, or officers who are agents, and only agents, may, from a distance, advise therein, give rules or directions to other agents for its management, but the business of the railroad company can only be done where the railroad is, or is to be, constructed, maintained, and operated.

The petition herein states, that the alleged bankrupt corporation has had its principal office, place of business, and domicil, in the city of New York—in part, at least, a legal impossibility—in which place, and during, &c., such corporation has transacted the ordinary, moneyed, commercial, and financial business of a railroad corporation. There was evidence that what the officers of the corporation called its general office was in New York; that its officers were there, and its board of directors were accustomed to meet at such office; that there the records and various accounts of its affairs and business were kept; and that there the corporation procured loans, or made purchases, in aid of the construction of its railroad and its equipment. Here is but an agency, whether it be minor or major, special or principal. It does not affect the present enquiry, that the agents embrace more or less in number or in authority. It is not here that the business is done, or can be done, for which the company was created, although

here are business transactions, within the power of the corporation, it may be, but only in aid of its substantive business, and incidentally necessary, perhaps, to its accomplishment.

Further illustrations might be drawn from the existence of very numerous banks, and manufacturing and other corporations, in the various states of the Union, which, although carrying on the business for which they are incorporated within the states where they are created, nevertheless have, for very important and necessary incidental transactions continuous agencies in one or more of our principal cities. It was not intended, by reason of such transactions, to subject them to proceedings in bankruptcy where those agencies were maintained, whether there conducted by agents under one name or another, either officers, clerks, or by whatever name or official relation designated.

In view of all the considerations which I have suggested, I am of opinion, that, in reference to a railroad corporation created by the state of Alabama, for the building, maintaining, and operating a railroad in that state, a construction of the act which subjects it to proceedings in bankruptcy in this district is not reasonable, not required by the language of the statute, and not according to its intention. I do not fail to see, that the contrary may be plausibly argued, as, in fact, it has been, plausibly and ably, by the counsel for the creditor. But the corporation cannot itself remove to this district. It cannot, in this district, carry on the business for which it was created. It can only, out of sufferance, do here such collateral or incidental things as are not its substantive business, but only aids thereto, or which facilitate its accomplishment.

It follows, that the objection to the jurisdiction of the district court for the southern district of New York should have been sustained, and the petition of the creditor dismissed. The adjudication declaring the company a bankrupt is, accordingly, reversed.