# GORDON *v.* THIRD NATIONAL BANK OF CHATTANOOGA.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ALABAMA.

No. 176.  Submitted February 29, 1892. — Decided March 21, 1892.

In an action brought in the Circuit Court of the United States in Alabama the complaint described the plaintiff as a bank organized in accordance with the laws of the United States and as doing business in Tennessee, and the defendant as residing in the State of Alabama.  The summons described the plaintiff as " a citizen of the State of Tennessee," and the defendant " as a citizen of the State of Alabama."  The question of jurisdiction was raised for the first time in this court.  *Held*, that although greater care should have been exercised, by plaintiffs in the averments, the diverse citizenship of the parties appeared affirmatively and with sufficient distinctness in the record.

A promissory note payable to the order of the maker, being endorsed by him, was endorsed and delivered to another for his accommodation. The latter endorsed it and borrowed money upon it, waiving demand and protest.  The waiver was stamped upon the back of the note by mistake over both endorsements.  *Held*, that the liability of the maker was not affected thereby.

The evidence in this case does not tend to show a contract of extension for a valid consideration, and for a definite and certain time, binding upon the parties, and changing the nature of the contract to the prejudice of the maker of the note.

THE court stated the case as follows:

This was an action by the Third National Bank of Chattanooga, Tennessee, against Eugene C. Gordon upon two promissory notes executed by Gordon and made payable to his own order, and endorsed by him and also by D. G. Crudup & Co. Gordon pleaded the general issue, and special pleas by setting up, first, that the notes were merely accommodation paper for the use and benefit of D. G. Crudup & Co., and that the bank, after notice of that fact and with Gordon's consent, for a valuable consideration, agreed with Crudup & Co. to extend the time of payment of the notes to September 2, 1887, and

thence to September 2, 1888, in consideration of a mortgage on certain lots in Chattanooga together with some land company stock; second, that he did not endorse the notes in manner and form as the bank set forth in its declaration; third, that long after the maturity of the notes, which were executed without other consideration than that of accommodation paper for the use of Crudup & Co., of which the bank then and there had notice, Crudup & Co., by deed of general assignment for the benefit of all their creditors and for the payment of the notes, conveyed a large amount of personal and real property to trustees, with full and ample power to collect, settle and dispose of the property and pay off all their indebtedness, including the notes, and that thereafter the bank, with notice aforesaid and without the knowledge or consent of Gordon, agreed with Crudup & Co., in consideration, among other things, of enabling Crudup & Co. to effect a general compromise with all their creditors, to waive its right to have the payment of the notes made by the trustees under the general deed of assignment, notwithstanding the property conveyed was of sufficient value, and could have been disposed of by the trustees for an amount in excess of what would have been necessary, to settle and discharge all of their indebtedness, including the notes sued on.

The complaint alleged the plaintiff to be "a corporation duly and legally organized, in accordance with the laws of the government of the United States of America, under the style and name of 'The Third National Bank of Chattanooga,' in the State of Tennessee, doing business as bankers in the city of Chattanooga in the State of Tennessee," and averred that plaintiff "claims of the defendant, E. C. Gordon, who resides in the county of Limestone, State of Alabama, in the northern division of the Northern District of the State of Alabama, the sum of five thousand dollars with interest," etc. This complaint was filed February 16, 1888, and thereupon a summons issued, whereby the marshal of the district was "commanded to summon E. C. Gordon, who is a citizen of the State of Alabama, to appear before the Hon. Circuit Court aforesaid, at the place of holding said court, at Huntsville on the first

Monday of April next, to answer the complaint of the Third National Bank of Chattanooga, who is a citizen of the State of Tennessee."

There was evidence that the bank did "business at Chattanooga, Tennessee;" and that the defendant "lived" or "resided" at Decatur, Alabama.

The notes sued on were as follows:

" $2500.00.          CHATTANOOGA, TENN., *Feb'ry* 15, 1887.

"Sixty days after date I promise to pay to the order of myself twenty-five hundred dollars at 3rd Nat'n'l Bank, Chattanooga, Tenn., value received.

"E. C. GORDON."

Upon the back of this were the following words:

"Demand, protest and notice of protest waived and payment guaranteed within five days from date of maturity.

"E. C. GORDON,
"D. G. CRUDUP & Co."

"$2500.00.          CHATTANOOGA, TENN., *Feb'ry* 15, 1887.

"Ninety days after date I promise to pay to the order of myself twenty-five hundred dollars at 3rd Nat'n'l Bank, Chattanooga, Tenn., value received.

"E. C. GORDON."

Upon the back of this note were endorsed the names "E. C. Gordon" and "D. G. Crudup & Co.," and below the endorsement "E. C. Gordon" and above the endorsement "D. G. Crudup & Co.," was stamped in printed letters the following words: "Demand, protest and notice of protest waived, and payment guaranteed within five days from date of maturity."

It appeared from the testimony that the words on the back of the notes besides the signatures were stamped thereon when the notes fell due at the request of Crudup & Co., to save protest fees and costs; that Crudup & Co. agreed to the waiver and guarantee so expressed, but defendant had nothing to do with that agreement; that it was intended to stamp the words over the name of D. G. Crudup & Co. alone, but in

stamping one of the notes the words were put on upside down, (as the note showed;) and that, in restamping, they were put over defendant's name also.

The defendant objected to the introduction of the notes in evidence, and also moved to exclude the first one, but the court overruled the objection and motion, and defendant excepted.

It further appeared that the notes were discounted by the bank in the due course of business, and that the bank had no notice that Gordon signed them for the accommodation of D. G. Crudup & Co., and was not informed thereof until about a month after the notes matured, (demand of payment having been previously made and refused,) when, in reply to one of several letters urging payment, Gordon wrote that he signed the notes for Crudup & Co.'s accommodation. The evidence showed that July 30, 1887, D. G. Crudup & Co., Tabler, Crudup & Co., and the Tabler Crudup Coal and Coke Co., the two partnerships being composed of D. G. Crudup and J. H. Tabler, and the other a corporation created under the laws of Tennessee, Crudup and Tabler owning nearly the entire stock, made general assignments in one instrument for the benefit of their respective creditors, the indebtedness to the Third National Bank, (including Gordon's notes,) placed at $11,600, being scheduled among the liabilities of the Tabler, Crudup Coal and Coke Co.

On September 2, 1887, a deed was given by Crudup's father, of certain lots in Chattanooga, to one Richmond, who gave back a defeasance declaring the property to be conveyed in trust to secure an indebtedness to the Third National Bank of Chattanooga of about $11,600 and interest, due from the Tabler, Crudup Coal and Coke Co., and D. G. Crudup & Co., and that it was agreed that the real estate should be held for twelve months, unless sooner sold by direction of D. G. Crudup, and that, if the bank's debt was not then paid, the lots should be sold in such manner as should be agreed on by the bank and Crudup. Another assignment by D. G. Crudup, D. G. Crudup & Co., and the Tabler Crudup Coal and Coke Co., dated October 1, 1887, was also offered in evidence. This

referred to the first assignment and recited that "neither of the assignees had taken charge of the property assigned to them, nor assumed to execute the trusts." The bank was not included in the schedule of creditors. The trustees named in the first assignment were Ewing and Baskett, and Ewing died shortly after, while Baskett, who was the bank's cashier, declined to act as assignee. After the first assignment was made the creditors had several meetings at which the bank was represented, either by Hart, its president, or Baskett, its cashier.

The court sustained an objection to testimony as to what was done by the creditors at these meetings, and to an offer to prove that the creditors, including the bank, agreed that, as the property conveyed by the assignment of July 30 was more than sufficient to pay all the debts, and as they desired to save the assignors all unnecessary expense, the property conveyed by that assignment should be reconveyed to the assignors, and that the latter should make other arrangements for securing their creditors, which they did; and also excluded all evidence as to what was done by the creditors under the assignment of July 30, and as to a reconveyance by Baskett to the assignors of the property conveyed by the assignment; and also excluded the assignment of October 1, 1887. The court ruled that what was said and done by the plaintiff in connection with the other creditors in regard to the general assignment, and in regard to reconveying the property and agreeing to take other security, could not be proved in defence unless it was shown, or could be shown, that the plaintiff either agreed to extend the payment of the notes sued on or to forbear the enforcement of such payment for some period of time.

Crudup testified to a conversation with Hart in regard to securing the indebtedness and that Hart agreed to accept the security of the three lots in Chattanooga, and to give twelve months' time, and that he handed a copy of the defeasance of Richmond to Hart or Baskett; that in the interview with Hart the Gordon notes were not specifically referred to in speaking of the matter of securing the indebtedness, and no part of the indebtedness was; that there was no agreement

made with the bank other than as shown by the Richmond defeasance; and that plaintiff had not sued Crudup & Co.

Hart testified that he never saw the deed to Richmond or the defeasance until two days before the trial; that Crudup said he would secure the bank with three lots for their indebtedness of $6500 or $6700, which did not include the Gordon notes; that the bank never agreed to extend the Gordon notes or any other notes of Crudup & Co. for twelve months, nor did witness have any understanding or agreement with Crudup or his attorney for the extension of the Gordon notes; that the in- debtedness of Crudup & Co., Tabler, Crudup & Co. and the Coal and Coke Co., to the bank, amounted to $6500 or $6700; not including the Gordon notes, which notes did not appear on the books of the bank as part of the indebtedness of the two firms and the corporation; that witness had no idea that the Richmond transaction secured anything more than the $6500 indebtedness; that Crudup did not deliver the deed or defeas- ance to witness nor to Baskett; and that the bank looked alone, as to the notes sued on, to their maker, Gordon.

The defendant requested the court to give to the jury the following instruction: "The circumstance that no suit has been brought by plaintiff against Crudup & Co., is such a cir- cumstance as should be considered by the jury, in connection with all the other evidence in the case, in determining whether an agreement was made between the plaintiff and Crudup & Co., by which an extension of time of payment of said notes was given them." This instruction the court refused to give, and the defendant duly excepted.

The jury found a verdict for plaintiff for the full amount of the notes and interest, judgment was entered thereon, and the cause brought to this court by writ of error.

*Mr. T. D. Young* and *Mr. Milton Humes* for plaintiff in error.

*Mr. William Richardson, Mr. George T. White, Mr. Fran- cis Martin* and *Mr. David D. Shelby* for defendant in error.

Mr. Chief Justice Fuller delivered the opinion of the court.

Seventeen errors are assigned, of which those in relation to the jurisdiction of the Circuit Court, to the admission of the notes in evidence and to the rulings of the court in the exclusion of testimony, are relied on.

The question of jurisdiction is raised for the first time in this court, and as we are of opinion that the diverse citizenship of the parties appears affirmatively and with sufficient distinctness from the record, of which the summons forms a part, we must decline to reverse the judgment on this ground, although greater care should have been exercised by the plaintiff in the averments upon that subject.

Nor do we regard the stamping of the waiver and guarantee upon the back of the notes as altering them, so far as Gordon was concerned, in a material particular, and thereby rendering them inadmissible in evidence. Gordon was the maker of the notes and had endorsed them simply to give them negotiability. No waiver of demand or protest was necessary to hold him liable. It was put on the notes on account of Crudup & Co., the endorsers, and at their request, and the mere inadvertence in placing the words above the name of Gordon, as well as above that of Crudup & Co., on the back of one of the notes, had no effect upon Gordon's rights.

This brings us to consider the main position taken in the argument of counsel for plaintiff in error, that the court erred in excluding evidence offered on his behalf. The contention is that although the bank took the notes for value in ignorance that they were accommodation paper, yet, after they matured, the bank was informed that such was the fact, and then extended the time of payment by agreement with Crudup & Co. without Gordon's knowledge or consent, and also waived its right to have the notes paid out of the property conveyed under the deed of general assignment; and that this constituted a defence, which the excluded evidence tended to make out. It is a sufficient answer to this contention, that there was no evidence tending to show a contract of extension for a valid consideration and for a definite and certain time, binding in law upon the parties and changing the nature of the

contract to the prejudice of Gordon. *McLemore* v. *Powell*, 12
Wheat. 554; *Creath's Administrator* v. *Sims*, 5 How. 192.
The hands of the bank were not tied by anything it had
done, and Gordon could have paid the notes and sought his
remedy against Crudup & Co. at any moment.   The bank
did not know that the transaction with Richmond was made to
include these notes; but even were this otherwise, the de-
feasance did not amount to a contract of extension on its part.
Nor did the evidence tend to show any agreement between
Gordon and the bank that the latter would look to the assets
of the Crudup concerns for payment, and a loss by reason of
laches on the bank's part.

The  second  assignment  provided  that  the  proceeds  of  the
property should be to a considerable extent differently applied
than under the first one, and the bank was not a party to it.
Crudup & Co. could not resume the title to their property, and
the first assignment was operative, notwithstanding the
death of one trustee and the declination of the other.   And
in any view, there was no legal suspension of the right to pro-
ceed upon the notes which would have prevented Gordon, on
taking them up, from enforcing them.   The evidence was
clearly immaterial and irrelevant and properly excluded; and,
as there was no error in the rulings of the court, the judgment
must be                                      *Affirmed.*