## WARD v. BLAKE MANUF'G CO.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1893.)

### No. 202.

1. FEDERAL COURTS — JURISDICTION — DIVERSE CITIZENSHIP — CORPORATIONS — PLEADING.

An averment that plaintiff "is a corporation organized and domiciled in the state of New York," sufficiently shows that the corporation is a citizen of that state, within the provision of the acts requiring diverse citizenship to give jurisdiction to the federal courts.

2. EVIDENCE — RELEVANCY.

In an action to recover the price of certain pumping machinery the answer averred that the water cylinders were too weak for the pressure made upon them. *Held,* that for the purpose of disproving this allegation it was competent to introduce evidence that plaintiff had put up pumps in another city, made from the same patterns, and identical in all respects, which pumped successfully against a static head much greater than that of defendant's pumps.

3. SAME — EVIDENCE MADE COMPETENT BY ADVERSE PARTY.

When one party testifies as to conversations leading up to a written contract determining the rights of the parties, it is not error to permit the other party to give evidence as to the same matters, though all the evidence was strictly inadmissible.

4. SAME — REVIEW — GENERAL OBJECTIONS.

An alleged error in the admission of evidence will not be considered by an appellate court when the record merely recites that the complaining party "objected" and "excepted." U. S. v. Shapleigh, (8th Circuit) 4 C. C. A. 237, 54 Fed. Rep. 126, 12 U. S. App. 26, followed.

5. SALE OF MACHINERY — ACTION FOR PRICE — DEFECTS — BURDEN OF PROOF — INSTRUCTIONS.

In an action to recover the price of machinery sold the defense was that the machinery was defective. There had been breakages, which defend-

ant maintained arose from such defects, but which plaintiff claimed were due to negligent and unskillful operation by defendant. This issue was fully tried to the jury. *Held*, that there was nothing erroneous or misleading in a charge that the burden was on defendant to prove not only that the machinery became defective, as alleged, but that such defects grew out of inherent defects and weakness, and was not due to other causes. ·

In Error to the Circuit Court of the United States for the Eastern . District of Arkansas.

At Law. Action by the Blake Manufacturing Company against Zeb Ward to recover a balance due on the contract price of certain machinery sold to him. There was a verdict for plaintiff, and judgment thereon, and defendant brings error. Affirmed.

· Statement by CALDWELL, Circuit Judge:

On the 12th day of December, 1885, the Blake Manufacturing Company, the defendant in error, agreed to manufacture and put up for Zeb Ward, the plaintiff in error, at Little Rock, Ark., pumps and pumping machinery for the purpose of supplying that city with water from the Arkansas river. When this contract was entered into the plaintiff in error made certain representations to the defendant in error as to the height from which the water was to be drawn, and the height to which it was to be thrown. The contract specified the water was to be "lifted to a height of 200 feet.". It turned out that the water had to be lifted to a height of 285 feet, and that it had to be drawn from a greater height than was represented. The machinery was constructed and put in place. Its operation was not satisfactory. The plaintiff in error contended that this was the result of some defect in the construction or erection of the machinery, and the defendant in error contended it resulted from the representations of the plaintiff in error as to the height from which the water was to be drawn, and the height to which it was to be thrown, the defendant in error having been guided by these representations in the manufacture of the machinery. Thereupon the parties entered into a second contract as follows:

"This agreement, made and entered into this 24th day of May, 1887, by and between the Geo. F. Blake Manufacturing Company, of Boston, Mass., party of the first part, and Col. Zeb Ward, of Little Rock, Ark., party of the second part, witnesseth, that for and in consideration of the original contract made· between the same parties in the sum of thirteen thousand dollars, ($13,000,) and the further consideration of five thousand five hundred dollars, ($5,500,) the party of the first part agrees to carry out the proposition marked No. 2, and dated May 24th, 1887, in all its details, which not only consists of changing the two pumping engines now in the waterworks at Little Rock into compound condensing engines, each having 16″ high-pressure and 30″ low-pressure cylinders, and 18″ stroke, but further includes the furnishing by the party of the first part of two independent suitable air pumps and condensers, and one extra heater, so as to make the engines exact duplicates, and also includes all the pipe connections that are required to make the same job complete for running the engines separately or together, so that one engine can pump two million five hundred thousand (2,500,000) gallons of water in twenty-four (24) hours, or that the two engines together will pump an aggregate of five million (5,000,000) gallons of water in twenty-four (24) hours, through the 16″ pipe now laid from the engine house at Little Rock to the reservoirs. The party of the first part further agrees to send a competent engineer to Little Rock to remove the present machinery, that will not be wanted after the changes are made, and he to place the pumps on new foundations, that are to be built by the party of the second part, and at the expense of the party of the second part, after templates to be furnished by the party of the first part. The further intent of the party of the first part is to fit out this machinery complete at the pump house, and put the same in action, so as to satisfactorily perform the full requirements of· the contract, with the complete connections belonging inside the walls of the pump house; the party of the first part not to be held responsible

for any work outside of the pump-house walls. In consideration of the foregoing being carried out, the party of the second part agrees to pay to the party of the first part the balance due on the original contract of thirteen thousand dollars, ($13,000,) and further agrees to pay, in addition to this, the sum of five thousand five hundred dollars for the material and labor to be furnished in proposition No. 2, which is made a part of this contract. The party of the second part further agrees to pay the balance due on old contract, as soon as all the new machinery arrives at Little Rock, and further agrees to pay the balance of five thousand five hundred dollars, after all the work is completed, and the engines put in operation. It is further agreed by both parties to this contract that, in the event of any disputes in the final settlement of this contract, as to its meaning or execution, said disputes are to be settled by a board of arbitration, the party of the first part selecting one expert, the party of the second part selecting one expert, and the two experts thus chosen to select a third expert that will be satisfactory to themselves, and the party of the first part and the party of the second part agree to be governed by the decision of a majority of the board of arbitration."

This action was brought to recover $7,000, alleged to be due on the first contract, and $5,500 on the second contract, and $2,899.79 on account for machinery and labor not included in the contract. The defendant filed an answer setting up various breaches of both contracts, be reason of which he claimed damages in the sum of $25,000, for which he made his counter-claim. The plaintiff filed a reply to the counterclaim, alleging that the contract had been complied with. The jury found for the plaintiff for the balance of $7,000 claimed to be due on the first contract, and for the $5,500 claimed to be due on the second contract, with interest. They did not find for the plaintiff on the account for $2,899.79 for the materials and labor, which the plaintiff claimed was not covered by the contract. There was judgment upon the verdict, and the defendant sued out this writ of error.

U. M. Rose and G. B. Rose, (Caruth & Erb, on the brief,) for plaintiff in error.

John M. Moore and H. D. Wood, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

CALDWELL, Circuit Judge, (after stating the facts.) The jurisdiction of the court is challenged upon the ground that it does not appear from the averments of the complaint that the plaintiff is a citizen of New York, or that its citizenship is different from that of the defendant. The point was not suggested in the court below. The allegation of the complaint is that the plaintiff "is a corporation organized and domiciled in the state of New York." A corporation must dwell in the state of its creation. It cannot have a domicile in any other state. "It has no faculty to emigrate." St. Louis v. Ferry Co., 11 Wall. 423, 429. The doctrine of the supreme court in the case of Bank v. Earle, 13 Pet. 519, 589, that a corporation "must dwell in the place of its creation, and cannot migrate to another sovereignty," has never been departed from. In a recent case in that court, after quoting the language of Chief Justice Taney in the case last cited, Mr. Justice Gray, speaking for the court, said:

"This statement has been often reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home, the domicile, the habitat, the residence, the citizenship of the corporation, can only be in the state by which it was created, although it may do busi-

ness in other states, whose laws permit it." Shaw v. Mining Co., 145 U. S. 444. 450, 12 Sup. Ct. Rep. 935.

The logical and necessary result of this doctrine is that a corporation cannot have a domicile anywhere except in the place of its creation. The averment, therefore, of the complaint, that the plaintiff is a corporation organized and domiciled in the state of New York, is, for the purpose of jurisdiction, tantamount to an allegation that it was chartered by the laws of that state. There is no prescribed formula for jurisdictional averments. It is sufficient to support the jurisdiction that the diverse citizenship requisite to confer it appears in any part of the record, (Gordon v. Bank, 144 U. S. 97, 12 Sup. Ct. Rep. 657,) or is the necessary consequence of the facts stated in the pleadings, (Express Co. v. Kountze, 8 Wall. 342; Jones v. Andrews, 10 Wall. 327, 331.)

For the purpose of jurisdiction in the courts of the United States in the case of natural persons domicile is the test of citizenship. Express Co. v. Kountze, supra; Hurlburt v. Van Wormer, 14 Fed. Rep. 709; Lessee of Cooper v. Galbraith, 3 Wash. C. C. 546; Case v. Clarke, 5 Mason, 70; In re Watson, 4 N. B. R. 197, (2d Ed. 613;) Railroad Co. v. Jones, 5 N. B. R. 97, 109; In re Alabama & Chattanooga R. R. Co., 6 N. B. R. 107. It is equally the test of the citizenship of a corporation. There is only this difference: a natural person may change his domicile, and therefore his citizenship, but the domicile of a corporation must always remain the same, and is necessarily in the state of its creation. Where the diverse citizenship of the parties was not alleged in the complaint, but was stated in the summons issued by the clerk, the supreme court held that to be sufficient, and in its opinion uses language which may appropriately be repeated here. The chief justice, speaking for the court, said:

"The question of jurisdiction is raised for the first time in this court, and, as we are of opinion that the diverse citizenship of the parties appears affirmatively and with sufficient distinctness from the record, of which the summons forms a part, we must decline to reverse the judgment on this ground, although greater care should have been exercised by the plaintiff in the averments upon that subject." Gordon v. Bank, 144 U. S. 97, 103, 12 Sup. Ct. Rep. 657.

The defendant alleged in his answer that the "water cylinders were too weak for the pressure made upon them." To disprove this allegation the plaintiff proved by a witness, over the objection of the defendant, that it had put up pumps at Racine, Wis., with water cylinders made from the same patterns, and identical in all respects with those made for defendant, which pumped successfully against a static head greater than that of defendant's pumps by the difference between 350 and 285 feet. As the pressure from a given static head in Racine must be the same that it is in Little Rock, it was competent for the plaintiff to show that a pump in the latter place, of the exact pattern of the one made for the defendant, had been in use some time, and that its water cylinders proved to be of sufficient strength to resist a static pressure considerably greater than the pressure upon the defendant's pumps. Such evidence had a tendency to prove the construc-

tion of the defendant's pumping machinery was not faulty in the respect claimed by the defendant.

It is assigned for error that the court allowed the plaintiff to introduce parol evidence to vary the written contract between the parties. The contract here referred to was the first one which the parties made, and which, as we shall hereafter see, was superseded by a later contract. But, supposing the first contract had not been superseded, the evidence was competent under the circumstances. The defendant testified in his own behalf, and detailed the conversation which took place during the treaty between the parties which led up to the first written contract, in reference to the quantity of water to be pumped, the height of the reservoir above the pump, the joint and separate capacity of the pumps, and other matters. In rebuttal of the defendant's testimony on the subject of this conversation, the plaintiff offered evidence of what was said on the occasion. The defendant, without withdrawing or offering to withdraw his evidence on the subject, objected to that of the plaintiff. If the evidence on the subject was irrelevant or incompetent, the defendant first introduced it, 'and will not be heard to complain that the court permitted the plaintiff to introduce evidence in rebuttal. Railway Co. v. Tankersley, 54 Ark. 25, 14 S. W. Rep. 1099; Elliott's App. Proc. § 62~.

For the same reason the fourth assignment of error is without merit. The defendant had testified as to what took place between himself and Worthington; and the testimony of Johnson, and the written propositions read in evidence, were properly admitted in rebuttal of the defendant's testimony. These assignments of error are not well taken for another reason. The specific grounds of the objection to the introduction of the evidence are not disclosed by the bill of exceptions. All the record discloses is that the defendant "objected" to the introduction of the evidence, and "excepted" when his objection was overruled. An objection to the introduction of evidence presents no question for review in the appellate court, unless the bill of exceptions discloses that the specific ground of objection to the introduction of the evidence was brought to the attention of the trial court. U. S. v. Shapleigh, (8th Circuit,) 12 U. S. App. 26, 4 C. C. A. 237, 54 Fed. Rep. 126; Burton v. Driggs, 20 Wall. 125; Elliott's App. Proc. § 779; Thomp. Trials, § 693; Railroad Co. v. Charless, (9th Circuit,) 7 U. S. App. 359, 375, 2 C. C. A. 380, 51 Fed. Rep. 562.

At the request of the plaintiff the court told the jury that, "if the machinery was tested under the direction of the plaintiff and the defendant by an expert employed by the defendant for that purpose, and the test showed that the machinery was constructed in compliance with the contract, the jury are instructed that, before the defendant can recover under his counterclaim any damages by reason of the alleged failure of the machinery to comply with the provisions of the contract, it is necessary for him to show, and the burden of proof is on him, not only that the machinery became defective as alleged, but that such defects grew out of inherent defects and weakness in the machinery,

and was not due to other causes." The substance and effect of this instruction was to tell the jury that the burden of proof was on the defendant to show that the machinery furnished was defective. Whether a test of the machinery was made or not, under the pleadings the burden of proving it defective was upon the defendant; and, in so far as the instruction made this burden depend upon finding that a test was made by an expert employed by the defendant, which showed that the machinery was constructed in compliance with the contract, it was not prejudicial to the defendant, but imposed too great a burden on the plaintiff. The instruction must be construed in the light of the pleadings and the evidence and other parts of the charge, and, when thus construed, it is very clear the jury could not have misconceived its object and purpose. The action was brought to recover the contract price for machinery furnished and set up by the plaintiff for the defendant. The defense was that certain parts of the machinery were defective, and particularly that the water cylinders were too weak. There had been breakages in the machinery, which, the defendant alleged, resulted from its defective construction or erection, but which the plaintiff maintained resulted from its negligent and unskillful operation by the defendant. This issue was fully tried to the jury. Read in the light of these facts, the jury must have understood that it was their duty to determine whether the breakages in the machinery resulted from defects in its construction or erection, or from its negligent or unskillful operation by the defendant.

The defendant asked the court to give this instruction:

"One of said contracts provides that plaintiff shall furnish defendants with two pumps, each capable of pumping 2,500,000 gallons of water a day. It has been contended for the plaintiff that it was the intention of the parties that only one of the pumps should be operated at a time, but, as the written contract contains no such provision, you are told by the court that such is not the proper construction of said contract, but that said contract required that both of said pumps should be constructed in such manner that they could be operated together or separately, as occasion might require."

The first contract was clearly superseded by the second. It is said in the brief of the learned counsel for the plaintiff in error that "it is plain that if the second contract was not complied with by the plaintiff, the defendant was remitted to his remedies under the first;" but the jury found that the second contract was complied with, and this finding renders any consideration of the first irrelevant. The defendant himself, in his letter to the plaintiff of December 24, 1888, relating to the pumps furnished under the second contract, says: "The test of the present pumps was very satisfactory, and they have been working very satisfactory since."

The judgment of the court below is affirmed.