### RHODES v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1897.)

#### No. 833.

1. PENSIONS—PAYMENT PROCURED BY FRAUD—ACTION TO RECOVER BACK.
    The statement by an applicant for a pension that he contracted a certain disease in the line of his duty as a soldier was not false if, although he had the disease before he enlisted, he was then cured of it, and contracted it again while in the service; and the United States cannot recover back the money on the ground it was obtained by fraud.

2. SAME.
    Under Rev. St. §§ 4693, 4694, providing that a soldier who was "disabled by reason of any wound or injury received, or disease contracted, while in the service of the United States and in the line of duty" shall be entitled to a pension, a disease cannot be regarded as having been contracted "in the line of duty" unless the service was the cause of the disease.

3. WEIGHING OF TESTIMONY—INSTRUCTIONS TO JURY.
    It is not error to charge the jury that it is for them to consider how much certain testimony of a negative character is worth as against positive testimony, and that ordinarily the evidence of a witness who swears

positively that he saw something is more valuable than that of witnesses who say they did not see it.

**4. APPEAL AND ERROR—REVIEW.**

There can be no reversal for error in admitting remarks of counsel to the jury when the record does not disclose the substance or character of the remarks.

**5. SAME.**

An objection to testimony cannot be considered by an appellate court where no ground of objection was stated at the trial.

**6. SAME—MOTION FOR NEW TRIAL.**

A motion for new trial is addressed to the sound discretion of the court, and the ruling upon it is not reviewable upon appeal.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

On October 25, 1895, the United States, the defendant in error, filed a petition in the court below to recover from Francis M. Rhodes, the plaintiff in error, $9,847.40, which it alleged that it had been induced to pay to him by his fraudulent representations that he contracted catarrhal ophthalmia while engaged in its service, and in the line of his duty as a soldier, when in fact he had contracted the disease before he entered its service. The plaintiff in error interposed an answer, in which he denied that his representations had been fraudulent, and averred that he did contract his disease while in the service of the government. There was a trial of the case to a jury, and a verdict and judgment for the United States. The writ of error challenges this judgment.

B. R. Dysart and R. S. Matthews (R. G. Mitchell with them on the brief), for plaintiff in error.

Walter D. Coles (William H. Clopton with him on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The chief complaint in this case is that the court below submitted to the jury the issue whether or not the disease of the plaintiff in error was contracted "in the line of duty," when that issue was not raised by the pleadings or by the evidence, and that it erroneously stated the law governing the issue in the following paragraphs of its charge:

"If you find that he did have ophthalmia—a disease of the eyes—prior to the time of his entering into the army, then you should, under one phase of the evidence, also consider another question; that is, the possibility of his having had that disease, and of having been cured, before he entered the service, so that he was entirely free therefrom when he enlisted. If you find that he had had such disease, and was entirely cured, and that after his enlistment the disease reappeared, then there were no false or fraudulent representations in defendant's application for a pension. * * *

"Second. If, now, under the foregoing general directions, you find either that the defendant never had the disease in question before he enlisted, or that he had been afflicted therewith, but had entirely recovered therefrom, before his enlistment, then, inasmuch as there appears to be no doubt but what he suffered from the disease while in the service, you must next inquire whether he contracted it in the line of duty. This means that he must have contracted the disease as a result of his service, or as a result or by reason of the fact that he was in the service. The service must have been the cause of the disease,

not merely a coincident in time. An attack of epilepsy, for instance, while a soldier in the army, not resulting from any connection with the army, or any risk, hazard, or danger thereof, but as a result of an hereditary predisposition, would not entitle a soldier to a pension on the ground that he contracted that disease while in the service, because such disease would not have been contracted in the line of duty."

.The acts of congress provide that a soldier who was "disabled by reason of any wound or injury received, or disease contracted, while in the service of the United States and in the line of duty" shall be entitled to a pension. Rev. St. §§ 4693, 4694. In its petition in the court below, the government alleged that on March 9, 1878, the plaintiff in error filed with the bureau of pensions his application for a pension under these sections of the statutes, and thereby claimed and represented that he contracted catarrhal ophthalmia of both eyes "while a private in Company K of the 42d regiment of Missouri volunteer infantry, and while in the line of duty as a member of the organization aforesaid"; that upon this statement it allowed and paid him the pension; that he "did not become disabled by catarrhal ophthalmia of both eyes while a soldier in the armies of the United States, and in the line of his duty as such soldier, as aforesaid, but that he had contracted said disease long before enlisting in the army of the United States, and had had said disease and disability prior to engaging in said service, and that said disease and disability were not due to said service, and that the representation made in the application of said defendant for a pension under the pension laws of the United States that he incurred the disability aforesaid while in the army of the United States as aforesaid was false and fraudulent."

The plaintiff in error answered that he made the representation, that it was true, that he did not contract his disease before he entered the service, and that it was contracted in and was due to the service. Most of the evidence on the trial of the case was directed to the issue whether Rhodes contracted the disease before or after he enlisted as a soldier. He testified that he contracted it after his enlistment, and that he thought he caught it while he was visiting his cousin in another company, as one or two people in that company had sore eyes.

In this condition of the pleadings and proof, the question was fairly presented whether or not the plaintiff in error contracted his disease in the line of his duty. The charge against him was that he had fraudulently stated that he contracted it in the service and in the line of duty. The government had produced convincing evidence that he had suffered from it before he enlisted. But the court was trying a charge of fraud. The veteran was protected by the presumption of innocence and honesty. Every intendment was in his favor. Hence the judge rightly charged that, although he might have contracted the disease before he entered the service, yet, if he was cured of it, so that he was a sound man when he enlisted, and he subsequently contracted it again while he was in the service and in the line of duty, his statement in his application to the government was not false, and the United States could not recover. If the court had been requested to give this portion of the charge, it would clearly have been error to have refused. And it would have been no less error to have given

this charge without the limitation that the disease must have been contracted in the line of duty, because the plaintiff in error had represented that it was so contracted, and because the acts of congress authorize no pension for a disease not contracted in the line of duty.

Nor was there any error in the definition which the court gave to the jury of a "disease contracted in the line of duty" when he declared that "the service must have been the cause of the disease, and not merely coincident with it in time." This is the patent and natural meaning of the language of the statute. It places the service and the discharge of duty in the relation of causes to the injuries and diseases that warrant the grant of pensions. It allows a pension for wounds or injuries received, and for diseases contracted, in the service and in the line of duty. No one would seriously contend that every wound, injury, or disease received or contracted during the term of service is pensionable under this law. A wound or injury inflicted upon himself by a soldier, or received by him while hunting wild animals, or squabbling with his comrades for his own amusement, or while doing any other act not in the line of his duty, would form no basis for a pension. The reason is that it would not be caused by his presence in the line of duty. The same rule applies to wounds, injuries, and diseases; for in the law they stand together in a single class. The result is that neither injury nor disease can authorize the grant of a pension under the acts of congress unless it is caused by the presence of its victim in the line of duty when it was received or contracted.

The provision of the act of congress in question in this case was exhaustively considered and authoritatively construed by Attorney General Cushing in 1855. He concluded his discussion of it with these words: "In fine, the phrase 'line of duty' is an apt one, to denote that an act of duty performed must have relation of causation, mediate or immediate, to the wound, the casualty, the injury, or the disease, producing disability or death." 7 Op. Attys. Gen. 149, 161; 17 Op. Attys. Gen. 172. The fact that after this construction congress has retained this expression for more than 40 years, although it has repeatedly revised and amended the pension laws, amounts to a demonstration that Mr. Cushing and the court below properly interpreted its meaning.

It is assigned as error that the court instructed the jury that a great number of the witnesses for the plaintiff in error testified that they had opportunities of one kind or another to see the plaintiff in error prior to his enlistment, and that they never discovered that he had sore eyes; that the members of his family testified that he did not have any disease of his eyes before he enlisted; that much of this testimony was negative in its character; that the answers of many of the witnesses were, "If he had sore eyes, I didn't know it;" that it was for the jury to consider how much this testimony was worth as against positive testimony; and that, ordinarily, the evidence of a witness who swears positively to a thing, or emphatically says that he saw something, is more valuable than that of witnesses who say they did not see. But there was no error in this part of the charge. It correctly stated the character of the evidence, and the rule of experi-

ence and of law which was applicable to it. Au v. Railroad Co., 29 Fed. 72; Isaacs v. Strainka, 95 Mo. 517, 8 S. W. 427.

Another complaint is that, in arguing the cause to the jury, the counsel for the government, over the objection of the plaintiff in error, "commented upon the refusal of the defendant to consent that his family physician, Dr. Cantwell, should detail statements made by the defendant while being treated by him; and the court remarked that under the evidence before the jury in relation to Cantwell's connection with the case certain reference to it was legitimate." But this court cannot say that there was error in this ruling, because the comments which counsel made are not contained in the record, and we cannot presume that they were improper. The burden of proof is on him who asserts an error in the rulings of the trial court admitting evidence or remarks of counsel to show by the record the inadmissibility thereof. If the record does not disclose either the substance or character of the evidence or remarks, the legal presumption that the ruling is right is not overcome, and the judgment stands. U. S. v. Patrick, 20 C. C. A. 11, 18, 73 Fed. 800, 806; Association v. Lyman, 9 C. C. A. 104, 60 Fed. 498.

It is assigned as error that the court permitted one of the witnesses to answer a certain question, over the objection of counsel for plaintiff in error, but the record shows that he stated no ground of objection, and took no exception. An objection to testimony for which no reasons were assigned at the trial cannot be considered by an appellate court. U. S. v. Shapleigh, 12 U. S. App. 26, 46, 4 C. C. A. 237, 249, and 54 Fed. 126, 137; Ward v. Manufacturing Co., 12 U. S. App. 295, 5 C. C. A. 538, and 56 Fed. 437; Tabor v. Bank, 27 U. S. App. 111, 10 C. C. A. 429, and 62 Fed. 383.

The only other error assigned is that the court below denied a motion for a new trial, but that motion was addressed to the sound discretion of the court, and the ruling upon it is not reviewable here. Railroad Co. v. Howard, 4 U. S. App. 202, 1 C. C. A. 229, and 49 Fed. 206; McClellan v. Pyeatt, 4 U. S. App. 319, 1 C. C. A. 613, and 50 Fed. 686; Village of Alexandria v. Stabler, 4 U. S. App. 324, 1 C. C. A. 616, and 50 Fed. 689; Mining Co. v. Fullerton, 19 U. S. App. 190, 7 C. C. A. 340, and 58 Fed. 521; City of Lincoln v. Sun Vapor Street-Light Co., 19 U. S. App. 431, 8 C. C. A. 253, and 59 Fed. 756. Let the judgment below be affirmed, without costs to either party in this court.