McLaren and another vs. The Detroit & Milwaukee Railroad Company.

*Railroad company as carrier — Excuse for failure to transport.*

1. A railroad company receiving goods in this state, to be carried by its own and connecting lines to Buffalo, N. Y., *held*, not to be excused for a failure

McLaren and another vs. The Detroit and Milwaukee R. R. Co.

to transport to the end of its own line (at Detroit), and deliver, or offer to deliver, to the next carrier (the Great Western R. R. Co.), merely by the fact, which its agents knew, that there was a block of freight at Suspension Bridge (over the Niagara river), which created a block at Detroit, and the further fact that there was no room for the goods in the defendant company's depot at Detroit ; especially where it is not clear that the general block of freight for the east at the bridge would have prevented the transportation of plaintiffs' goods to Buffalo.

2. Whether a notice to defendant from the next carrier that it would receive no more freight of any kind from defendant, would have been a sufficient excuse, is not decided.

APPEAL from the Circuit Court for *Milwaukee* County.

On the 13th of December, 1864, the defendant company received from the plaintiffs at Milwaukee, thirty-five tierces of lard, consigned to Buffalo, N. Y., and gave plaintiffs a receipt therefor, which declared that the lard was to be transported by its road to Detroit, and there delivered to the next connecting railroad corporation or other transportation line, and in like manner to be delivered to each connecting corporation until it should have reached its destination. Said lard left Milwaukee on the 24th of the same month, and reached Detroit, Mich., February 3, 1865, and left Windsor, opposite Detroit, on the same day, and reached Buffalo March 1, 1865. On the 7th of January, 1865, defendant received from plaintiffs forty-two tierces of lard, to be transported from Milwaukee to Buffalo ; and the same left Milwaukee February 23, reached Detroit March 13, left Windsor March 18, and reached Buffalo March 26. On the 19th of January, 1865, defendant received from plaintiff twenty-five tierces of lard, to be transported between the same points, and these left Milwaukee February 23, reached Detroit March 16, left Windsor March 21, and arrived at Buffalo March 30. Receipts were given in the last two cases similar to the first. This action was brought for damages accruing from the unreasonable detention of these several lots of lard.

It appeared from the evidence, that the several lots of lard

were detained for a considerable length of time at Grand Haven, on the defendant's road. The grounds on which the defendant sought to excuse this delay will sufficiently appear from the opinion. There was evidence tending to show, that there was a railroad in operation from Paris — a point in the line of the Great Western Railway — to Buffalo, by which the lard might have been transported to Buffalo, notwithstanding the block of freight at the Suspension Bridge over the Niagara river. The jury were instructed that the defendant was bound, under its contracts, to deliver or offer the goods at Detroit, to the next carrier, within a reasonable time after its receipt; that it would not be excused from doing this by the mere fact that the Great Western Railway company had notified the defendant that it would not receive freight on account of a block of freight at Suspension Bridge; and that, if there was a line of railway from Detroit to Buffalo, by which the lard could have been sent within a reasonable time, and without difficulty, to Buffalo, without going *via* the Suspension Bridge, then the fact that there was a block at that bridge would not excuse the defendant. The following instructions, asked by defendant, were refused: 1. That if the goods were detained in Grand Haven by reason of the inability of the Great Western Railway to receive them, or if from that cause the defendant had no storage room in Detroit, and the plaintiffs' goods were detained in Grand Haven on that account, the defendant was excused. 2. That the defendant was not liable for the fall in the market value of the lard, unless its own unreasonable detention thereof caused such depreciation.

Verdict for the plaintiffs; new trial denied; and judgment in the verdict; from which defendant appealed.

*Emmons & Van Dyke*, for appellant, contended, among other things, that there was no evidence of the existence of any other responsible carrier than the Great Western Railway company, which could take the goods at Detroit, and that company

was not bound to take the goods to Paris, and thence to send them by a rival route to Buffalo; that the block at Suspension Bridge was, therefore, a sufficient reason for its refusing to receive freight at Detroit; and that the block at Detroit, and the fact that defendant's depot there was full, were a sufficient excuse for the detention of the goods at Grand Haven.

*Finches, Lynde & Miller*, for respondents:

If the Great Western company could not, or would not, take the goods by way of Suspension Bridge, the defendant should have tendered them as property bound to Buffalo; and the Great Western company would have been bound to transport to Paris, and thence to Buffalo. As to the general duty of carriers in such cases, counsel cited 20 Wis. 122, 594; 14 Mich. 489; 13 Allen, 386; 1 Coldw. 272.

COLE, J. It appears to us that there is not enough shown in this case to excuse the company. Having received the lard, it was under obligation to transport it within a reasonable time to the terminus of its road, Detroit, and tender it to the next carrier to be transported to its destination. This, it is admitted, the company did not do. There was a long delay, much beyond the period usually required to transport goods from Milwaukee to Detroit at that season of the year. But it is said that the defendant was excused from performing its contract to deliver the goods to the next connecting line at Detroit, on account of the temporary obstruction of freight east of that point. The testimony in regard to the block of freight was substantially the following: Foxley, who was the freight agent for the defendant at Milwaukee in the month of December, 1864, and January, February, and March, 1865, and remembered shipping the lard for the plaintiff, testified, that he was called upon in January by *McLaren* to explain why the lard shipped in December had not arrived at its destination. He says that he took steps to trace it up, and was told by the agent

at Detroit that it had not arrived at that place. He then proceeds: "I wrote either to the agent at Grand Haven or the
superintendent of the road at Detroit, or both, and found that
the lard had been lying at Grand Haven, owing to the inability
of the agent at Detroit to make room for it in his depot.
This inability of the agent at Detroit to take the lard,
arose from the inability of the Great Western and Grand
Trunk railways to take freight from him. I state this
merely on information from John Crampton, general freight
agent of the Detroit & Milwaukee Railroad company, and
other officers connected with the road." Reekie, who was station agent and check clerk for the road at Grand Haven at the
same time, testified that the lots of lard were delayed at that
point, as he was informed, by a block of freight at Suspension
Bridge; that this prevented the Great Western road from
receiving freight from the Detroit and Milwaukee road at
Detroit. He adds: "This block commenced some time in December, 1864. The block at the bridge occasioned the block at
Detroit; this in its turn occasioned the block of freight at Grand
Haven. To break the block at Grand Haven, I telegraphed to
the superintendent of the road at Detroit. In reply I got two
messages,—one that there was no need to send cars, as the Great
Western could not take the freight at Detroit. Subsequent to
this, I got a message from the superintendent, directing not to
send any more through freight until further orders." On his
cross-examination, he says that it must have been the latter part
of January when he received that dispatch. Gray, who was
freight agent of the company at Detroit, testified that the lard
was not detained at Detroit, but was forwarded without delay
by the Great Western road. He says: "I know that at the
beginning of December, and all the winter through, up to the
end of March, there was a block at Suspension Bridge, and
the said road would only take a limited quantity, and the consequence was, my warehouse was filled right through with

freight. During a portion they would only receive perishable freight. On the 11th of February they gave me notice that they would receive freight of no kind from us. I know the reason to be, that they were blocked up and could not take it."

This is the material testimony bearing upon the defense, that, under the circumstances, the defendant was excused for its failure to perform its contract by delivering the lard in a reasonable time to the next carrier at Detroit. And it appears to us that it is insufficient to establish a legal defense to the action. The defendant was bound to so transport the lard and tender it to the next carrier, that, if the latter wrongfully refused to receive the property, the plaintiffs would have had their action against it for such refusal. It appears that this block at Suspension Bridge had more particular reference to eastern freight. And while the Great Western might have been unwilling to receive freight consigned to points east of Suspension Bridge, on account of the obstruction at that place, it might have been willing to receive the lard in question, which was only going to Buffalo. The transportation of freight to Buffalo might have been practicable, notwithstanding the accumulation at Suspension Bridge. At all events, the defendant was bound to show a performance of its contract or offer some good excuse for not performing it. Had it transported the lard to Detroit in a reasonable time, according to the usual course of business, and tendered it to the next carrier, it would have discharged its liability. But this it did not do. It is said that the defendant was under no necessity of transporting the lard to Detroit and making a manual tender of it to the next carrier, to excuse itself; that if the Great Western had given notice that it would receive no freight of any kind, a tender of the lard would have been an idle ceremony. Whether the defendant, in order to discharge its duty, would be bound to make a tender of the lard to the Great Western, after having received notice from that company that it would take no more

freight, is a question not arising upon the facts of this case, and therefore calls for no expression of opinion on our part. It does not appear that the Great Western gave any such notice until the 11th of February, some time after the period when all the lard would have been delivered to that company, had the defendant used proper diligence in transporting it to Detroit. It is true, in the testimony of the agents of the defendant above cited, there are statements to the effect that the witness knew there was a block of freight at the Suspension Bridge, commencing some time in December, 1864. But this alone would not excuse the delay in transporting the property over its own road and tendering it to the next carrier. See the case of the *East Tennessee & Georgia R. R. v. Nelson,* 1 Coldwell (Tenn.) 272, which is in point upon this question.

We shall not notice in detail the instructions given on the part of the plaintiffs, nor those asked by the defendant, which were refused. The remarks above made are sufficient to dispose of all material questions arising upon the record.

We think the cause was fairly submitted to the jury upon the evidence.

  *By the Court.*—The judgment of the circuit court is affirmed.