BLODGETT, Appellant, vs. ABBOT and another, Trustees, etc.,
Respondents.

*October 11 — November 8, 1888.*

*Railroads: Carriage of freight over connecting roads: Duty of first carrier: Perishable freight: Statement as to time required for transportation: Evidence: Contract: Agency: Court and jury.*

1. A railroad company accepting perishable freight for transportation over its own and connecting roads, must forward the same promptly, to the extent of its ability, until it has delivered or offered to deliver it to the connecting carrier, and is not excused from the performance of such duty by the mere fact that its agent supposed there would be a delay in the forwarding of such freight by the connecting carrier.

2. In an action to recover damages for a delay in transporting potatoes, whereby they were frozen before reaching the consignees, it appeared that they were shipped in November when the weather was becoming cold. *Held,* that a statement as to the time it would require for them to reach their destination, made by defendants' agent at the point of shipment at the time the contract of carriage was made, was admissible in evidence, as it might have been the inducement of the contract.

3. A statement, made under such circumstances, that the potatoes would reach their destination at a certain time, would have the force of a contract to that effect; and, if the time allowed for transportation was a reasonable one, such contract would be within the scope of the agent's authority.

4. The evidence in this case being conflicting as to whether or not it was the duty of . the conductor of the defendants' train in which was the car containing the potatoes to have put such car on a " Y " from which it could be taken by a train on the connecting road, that question should have been submitted to the jury.

APPEAL from the Circuit Court for *Portage* County.

Action to recover damages on account of delay in the transportation of potatoes by the defendants over the railroad operated by them. The facts are stated in the opinion. At the close of the testimony the trial court directed the jury to return a verdict for the defendants. From the judgment entered on such verdict the plaintiff appeals.

For the appellant there was a brief by *Lamoreux & Park*, and oral argument by *B. B. Park*. To the point that, the evidence being conflicting and there being evidence to go to the jury on the question of defendants' negligence in not placing the car upon the " Y " on Saturday night, it was error for the court to direct the jury to find for the defendants, they cited *Dodge v. McDonnell*, 14 Wis. 553; *Colby v. Franklin*, 15 id. 311; *Langhoff v. M. & P. du C. R. Co.* 19 id. 489; *Imhoff v. C. & M. R. Co.* 22 id. 681–4; *Schomer v. Hekla F. Ins. Co.* 50 id. 575; *Jones v. C. & N. W. R. Co.* 49 id. 352; *Jucker v. C. & N. W. R. Co.* 52 id. 150; *Townley v. C., M. & St. P. R. Co.* 53 id. 626; *Spensley v. Lancashire Ins. Co.* 54 id. 433; *Johnson v. C. & N. W. R. Co.* 56 id. 274; *Fitts v. C. C. R. Co.* 59 id. 323; *Hoye v. C. & N. W. R. Co.* 62 id. 666; *Leavitt v. C. & N. W. R. Co.* 64 id. 228; *Lawrence University v. Smith*, 32 id. 592.

For the respondents there was a brief by *Howard Morris* and *D. S. Wegg*, attorneys, and *Winkler, Flanders, Smith, Bottum & Vilas*, of counsel, and the cause was argued orally by *J. G. Flanders*.

Orton, J. The following is a sufficient statement of the facts to show the pertinency of the questions raised and decided:

The Wisconsin Central Railroad, represented by the defendants as the trustees thereof, runs in part from Plover to Junction City in a northwesterly direction, at which last point it is crossed by the Chicago, Milwaukee & St. Paul Railroad, which runs thence in a northerly direction to Mosinee. On the 6th day of November, 1886, the defendants contracted with the plaintiff to carry a car-load of potatoes for him from Plover, by the way of Junction City, to Mosinee, for certain freight charges then paid, and received the same on board of their car about 12 o'clock on that day. The potatoes, which were of the value of about $200, were

so received in good condition, and were to be carried with such reasonable dispatch as would comport with the perishable nature of such property at that season of the year, and delivered to Joseph Desert & Co., or on their order, at such place of destination. The plaintiff had purchased said potatoes from one William Carley at Plover, and said Carley acted as the agent of the plaintiff in making said contract with the agent of the defendants at that place. The weather had been warm, but was changing to become colder. The train having the car arrived at Junction City about 6 o'clock that afternoon, on Saturday, and the car was left standing on the passing track of said road, from which place it could not be directly taken and shipped on the other road. There was a "Y" between the roads, upon which it would have to be run before it could be so taken and shipped. On its arrival, the car was billed to the other road, and the agent of that road at that point was notified of it, and he made arrangements to receive it on that road and send it along with an extra or wild freight train, which would and did arrive there from the south at 8:48 the same evening, and notified the conductor of said train to take it; and, supposing the car to be on the "Y," the conductor of that train went there to get it, but found that it had not been placed there, and for that reason he could not and did not take it along; and that train reached Mosinee about an hour afterwards, and the car would have been carried with said train had it been placed upon the "Y."

As to whether it was the duty of the conductor of the train which brought it there to have placed the car on the "Y" at Junction City, and as to whether such is the usage in such cases, there was some conflict of evidence. Burns, the agent of the defendants at that place, testified that such was the usage and custom; and he must have supposed that the conductor of that train had left the car upon the "Y," as he notified the agent of the other company that it was

there, ready for shipment; and said agent directed the conductor of the extra train on that road to go there, and he went there, to get it; and the train-dispatcher of the other road had telegraphed the agent of said road to have that train take the car, and the agent testified that they went to the usual place for the car, and it was not there. Dustin, the conductor of the train that brought the car to Junction City, testified that it was not his duty to put the car on the "Y," as the train was a through train and ought not to be stopped for such purpose; and that it was the duty of those in charge of a local or way freight train, which would arrive there the next morning, to place it on the "Y," and that such was the usage. But this witness testified that he did not know that this car contained perishable freight, and that such freight ought to be forwarded the earliest possible moment, and that in handling such freight he had placed cars upon the "Y," and that he could have done it in this instance if it had not been for the delay. There was a local or way freight train of defendants, standing on the main track, headed the other way, which had to be moved in order to let this car in upon the "Y," which would have taken some time. This local freight train might have placed the car upon the "Y," but the conductor had not been ordered to do so, and did not know that it contained perishable freight. The train-dispatcher of the defendants' road testified that, as a general rule, the conductor of a through freight train did not place cars upon the "Y;" but he testified, further, that if a car contained perishable freight it should go through as soon as possible; and if it should not delay him too long the conductor of a through freight train ought to put such a car on the "Y;" and that the custom is, in handling perishable freight, to give it precedence over everything else.

The car was put upon the "Y" the next morning by those in charge of a local or way freight train of the de-

fendants going the other way, and it was taken that night by those in charge of an extra or wild freight train on the other road, and arrived at Mosinee about 10 o'clock on that (Sunday) evening. When the car was at Junction City on Sunday afternoon, the potatoes were in good order; and on Monday morning, when the consignees were ready to receive them, they were frozen badly, and a large part of them were worthless from this cause, and rejected. The consignees were notified by said Carley, on Saturday, that the car would arrive at Mosinee that evening, and they were ready, with teams and men, waiting for the arrival of the car, to remove the potatoes therefrom, until 8 o'clock, when they were notified that the car would not arrive that night. The weather became very cold on Sunday and Sunday night, and began to grow colder on Saturday. There was some testimony tending to show that it was not in the ordinary course of business for any freight train on the other road to take this car, except a regular one. But this would seem to be immaterial, from the fact that the wild or extra freight train on that road was ready and made an effort to take it, and would have taken it, on Saturday night, if it had been placed upon the " Y," and the same kind of train on that road did actually take it on Sunday night. The first regular freight train on that road after the arrival of the car at Junction City was not due at Mosinee until the next Monday morning. The circuit court, on this evidence, directed the jury to render a verdict for the defendants, and entered judgment thereon.

This being substantially the evidence, the following errors assigned may be readily disposed of, and the one in connection with this last item of evidence will be first considered:

1. The witness Burns was asked by the defendants' counsel whether he had any knowledge that any other train except this regular one would go north on the other road to Mosinee. This was objected to as immaterial, incompetent,

and irrelevant. The objection was overruled, and the answer was that he did not. This evidence could not affect the liability of the defendants for their delay in not forwarding such perishable goods, to the extent of their ability to do so, until their delivery or offer to deliver them to the other road as the connecting carrier. They must acquit themselves of this duty, and they cannot shield themselves from it by delays on the connecting road. They were bound to know, when they so contracted, whether they could be carried through without such delay as would destroy or injure such perishable freight. Suppose that the car had never left Plover until the potatoes had become valueless by freezing, could the defendants escape liability by proof that there was no regular train on the other road to receive it before such time? Such is not the law. *McLaren v. D. & M. R. Co.* 23 Wis. 138; *Petersen v. Case*, 21 Fed. Rep. 885. The principle is too clear for further reference. It may be that the error as well as the evidence was quite immaterial, as the proof is clear that there was no unreasonable delay on the other road. Those in charge of that road did not wait for their regular train on the next Monday morning after the potatoes were frozen, but did their best to forward the car on their first extra train Saturday evening, and they finally forwarded it by the next extra train as soon as it was placed on the " Y " by the defendants, where they could reach it. But receiving such evidence, after objection, as material, the court may have given it weight in disposing of the case, and it was therefore a material error.

2. The witness Carley was asked what was said at the time (meaning when the contract was made) in regard to the length of time it would require to reach Mosinee. The court sustained the objection of the defendants. This was a flagrant error. Considering the season of the year and the perishable nature of this kind of freight by freezing, such

statement might well have been the very inducement of the contract. There is so great a similarity between the action *ex contractu* and *ex delicto* in such a case, or of failure to perform the contract and to discharge the duty, that it is difficult to determine which it is. The difference is more in form than in substance. Such a statement might greatly affect the duty of the defendants and the conduct of the plaintiff. The agent Carley might have been governed by such a statement in entering into the contract on behalf of the plaintiff; and his conduct in not giving this kind of freight more personal attention to protect it from injury on the way, and in having the consignees ready to receive it and take care of it on its arrival at the end of the route, may have been caused by it, and this the plaintiff offered to show. Without any such statement, if the defendants knew that the delay would be as it was, and that there were any reasons why the potatoes would not arrive at their destination until endangered by frost, and this they were bound to know (and they now claim that they did know that none but a local freight train cou d put that car on the "Y," and none but a regular freight train on the other road could or would take and forward it), then it was clearly their duty to have so informed the agent Carley before he entered into the contract or shipped them. *Ayres v. C. & N. W. R. Co.* 71 Wis. 372. Carley, the agent, notified the consignees that the car would arrive that night, and they were at the depot, ready to receive and take care of them. A statement of the agent of the defendants, at the time, that the car would arrive that night at Mosinee, under such circumstances, would have the force of a contract to that effect. *Strohn v. D. & M. R. Co.* 23 Wis. 130. The agent had the authority to so contract, because such time of carriage would have been reasonable for such freight at such a time. *Wood v. C., M. & St. P. R. Co.* 68 Iowa, 491; *Strohn v. D. & M. R. Co., supra.*

3. The evidence as to whether it was the duty of the conductor of the train in which the car went to Junction City to have placed it on the "Y" was, to say the least of it, conflicting; and, that being a most material question in this case, it ought to have been submitted to the jury. *Leavitt v. C. & N. W. R. Co.* 64 Wis. 228, and a great many cases cited in the brief of the appellant, to which reference may be had.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.