## MISSOURI PAC. RY. CO. v. HALL.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1895.)

### No. 447.

1. CARRIERS—CONTRACT OF SHIPMENT—PAROL EVIDENCE.
    In an action to recover damages for an unreasonable delay in transporting cattle under a written contract of shipment, evidence of a conversation had with defendant's shipping agent shortly before execution of the contract is admissible to show notice to the carrier of the plaintiff's intention to sell his cattle on a particular day.

2. SAME—OPINION EVIDENCE—COMPETENCY OF WITNESS.
    In an action against a carrier for unreasonable delay in transporting beef cattle, witnesses experienced in handling and shipping cattle may express an opinion as to the extent such cattle would shrink in weight in a given time, under given circumstances, though they have never seen plaintiff's cattle.

3. TRIAL—OBJECTIONS TO EVIDENCE—SUFFICIENCY.
    An objection to the opinion of witnesses as to the extent cattle would shrink in weight under given circumstances, as being "incompetent, irrelevant, and immaterial," is too general to raise the question of the competency of the witnesses as experts, or that the questions asked were hypothetical, and did not embrace a correct statement of the facts which the proof tended to establish.

4. CARRIERS—DELAY IN TRANSPORTATION—EVIDENCE—QUESTION FOR JURY.
    On an issue as to delay in delivering cattle to a connecting carrier, where it appeared that a specially detailed crew was ready to take the train on through, shortly after its arrival, but through defendant's mistake the cattle were unloaded, and upon being reloaded in the same cars a broken wheel was discovered, which necessitated additional delay, so that the cattle were delivered to the connecting carrier some seven hours after they should have been delivered, and arrived at their destination some five hours too late for that day's market, whether or not such delay was unreasonable, and attributable to defendant's negligence, was a question for the jury.

5. SAME—LIVE-STOCK SHIPMENTS—DELAY—INSTRUCTIONS.
    In an action for damages caused by defendant's delay in delivering cattle to a connecting carrier, an instruction that defendant was not liable if the delay was no longer than was necessary to comply with Rev. St. § 4386, requiring carriers of cattle to unload them, at the end of every 28 hours, for feed, water, and 5 hours' rest, excepting only where they are transported in cars provided with facilities for that purpose, was properly refused, as misleading, where the cattle were delayed 11 hours after being en route only 14 hours, and were loaded in cars in which they could be fed and watered without unloading, and, but for such delay, would have arrived on time, even if the connecting carrier had unloaded them for rest.

In Error to the United States Court in the Indian Territory.

Action by J. O. Hall against the Missouri Pacific Railway Company to recover damages for delay in the transportation of cattle. There was a judgment for plaintiff, and defendant brings error.

George E. Dodge, B. S. Johnson, and J. E. Williams, for plaintiff in error.

William T. Hutchings (Stockton S. Fears was with him on brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This was a suit by James O. Hall, the defendant in error, against the Missouri Pacific Railway Company, the plaintiff in error, to recover damages for an unreasonable delay in transporting 331 head of beef cattle from Nowata, in the Indian Territory, to the city of Chicago, Ill. The plaintiff recovered a judgment, and the defendant company has brought the case to this court, alleging several errors in the proceedings of the trial court. We will first notice certain errors that have been assigned relative to the admission of testimony.

It is urged, in the first instance, that the trial court erred in permitting the plaintiff, James O. Hall, to testify to an interview that he had with the defendant's live-stock agent, Mr. Boline, on the day the cattle were shipped, because, as it is said, the testimony tended to vary the terms of the shipping contract, which was entered into, in writing, shortly after the alleged interview. An inspection of the record shows that the conversation in question occurred on the morning of Saturday, June 20, 1891, and that the trial court held that only so much of the conversation was relevant and admissible as tended to show that the defendant's agent was advised that the shipper desired to have his cattle delivered in Chicago in time for the market of Monday, June 22, 1891. No error was committed in admitting this testimony. It did not vary the terms of the written contract, and was not intended to have that effect. It was admitted, as the record discloses, solely for the purpose of showing that the carrier had notice of the shipper's intention to sell his cattle on a particular day. If the plaintiff gave the defendant company notice that he wished his cattle to arrive in time for the market of a particular day, he might reasonably expect that in view of such information the carrier would be more expeditious in executing the contract of affreightment. The knowledge that a party has, when he enters into an agreement, of the object which the opposite party hopes to accomplish, should be allowed to have some weight in determining whether the party thus informed discharged the obligation which he assumed, with reasonable diligence, and with a due regard for the accomplishment of the purpose which the other party had in view. Blodgett v. Abbot, 72 Wis. 516, 40 N. W. 491; Railway Co. v. Gilbert, 4 Tex. Civ. App. 366, 22 S. W. 760, and 23 S. W. 320; McGraw v. Railway Co., 41 Am. Rep. 701.

It is claimed that the trial court further erred in allowing several witnesses, namely, Winfield Scott, W. C. Powell, and J. O. Hall, to testify as to the shrinkage in the weight of the cattle between June 22, 1891, and June 23, 1891, the day when the cattle were sold, the cattle having arrived on the 22d, but too late to be sold on that day. This objection is urged on the ground that no evidence was offered

to show that these witnesses were experts, or that they had ever seen the plaintiff's cattle; also, on the ground that the questions which elicited the testimony were hypothetical, and that they did not embrace a correct statement of the facts which the proof tended to establish. An inspection of the record clearly shows that two of these witnesses had been engaged for some years in handling and shipping cattle, and that they were doubtless competent to express an opinion as to the extent that beef cattle would shrink in weight in a given time, and under given circumstances. It is also fair to infer, we think, that the third witness followed the same calling, and was likewise competent to testify as an expert. We are also of the opinion that the hypothetical questions propounded to these witnesses contained a fair statement of the facts which the evidence tended to establish, and that this ground of objection was not well taken. There is a further reason, however, why the objection to the testimony in question ought not to prevail in this court. It was objected to solely on the ground that it was "incompetent, irrelevant, and immaterial." If the specific objection to the testimony which counsel urge in this court had been urged in the trial court, it is obvious that the defendant would have had no cause to complain either of the form of the hypothetical question, or of the competency of the witnesses to testify as experts. The objection stated was therefore too general to be of any avail in an appellate court. We would not be understood as deciding that an objection on the ground of "incompetency, irrelevancy, and immateriality" is always too general, but we think that, when counsel intend to rely on the ground that a hypothetical question propounded to an expert witness is based upon an erroneous statement of the evidence, that fact, at least, should be called to the attention of the trial court. We refer to what was said on that subject by this court in Insurance Co. v. Miller, 8 C. C. A. 612, 614, 60 Fed. 254.

It is further contended—and this is, perhaps, the most important matter that we have to notice—that the defendant company did transport the cattle, and deliver them to the connecting carrier at Kansas City, without unnecessary delay, and that the court should have so charged the jury. The evidence bearing on this issue tended to show that the cattle were received at Nowata by the defendant company about 1 p. m. on June 20, 1891; that they were loaded on cars with reasonable expedition; that the train left Nowata about 4 p. m. of the same day, and arrived at Kansas City the following morning between 6 and 7 o'clock. It is not claimed that there was unnecessary delay on the part of the carrier prior to the arrival of the train at Kansas City. There was further evidence, however, which tended to show that the Wabash Railway Company, the connecting carrier over whose line the cattle train in question was to be hauled from Kansas City to Chicago, had received notice of the expected arrival of the train, and had detailed an engine and crew to haul the same through to Chicago, and that said engine and crew were ready to start from Kansas City between 8 and 9 o'clock, a. m.; that, through some misunderstanding or oversight on the part of the defendant company's agents at Kansas City,

the cattle were taken to the stock yards immediately on their arrival, where they were unloaded; that they were subsequently reloaded, in the same cars in which they had made the journey from Nowata, when the mistake made in unloading them was discovered; that it was ascertained, after the cattle had been reloaded, that one of the cars in the cattle train had a broken wheel, which discovery necessitated some additional delay, so that the cattle were not in fact received by the Wabash Railway Company until about 1 o'clock p. m.,—some six or seven hours after they should have been delivered; and that they did not arrive in Chicago until about 7 p. m. the next day (Monday), which was four or five hours too late for that day's market. We have given careful attention to all of the evidence bearing on this branch of the case, and have reached the conclusion that it was fairly within the province of the jury to decide whether there was an unreasonable delay at Kansas City, and whether such delay was attributable to a want of proper diligence on the part of the defendant company's agents and employés. Those questions, in our judgment, were properly submitted to the jury, and with the finding of the jury on that issue we cannot interfere.

It is finally insisted that the trial court erred in refusing the following instruction which was asked by the defendant company:

"The court instructs the jury that, by the statutes of the United States (section 4386), railway companies and others transporting cattle are prohibited from keeping them on the cars, without feed, water, and rest, for a longer period than twenty-eight hours, and requires of all such companies or persons that cattle being so transported shall, at least at the end of twenty-eight hours, be unloaded, fed, and watered, and allowed at least five hours for rest, excepting only in cases where the cattle are transported in cars provided, not only with facilities for feeding and water, but also for room to rest. If, therefore, you find from the testimony in this case that plaintiff's cattle were shipped in cars not provided with all these facilities, or were so crowded as not to give opportunity for the cattle to lie down and rest, and that the time required in transportation from Nowata to Chicago would exceed twenty-eight hours, it then becomes imperative that these cattle should be unloaded at some point en route; and if you further find from the testimony that these cattle were not delayed longer in Kansas City than would have been necessary in such unloading, feeding, and resting, as above described, and they did not receive that treatment at any other point en route, in that event the court charges the jury that the delay at Kansas City was not a negligent one, and the defendant was not responsible for such delays, or any damage that may have resulted therefrom, and your verdict should be for the defendant."

Of its own motion, the trial court charged the jury, in substance, that the plaintiff could not recover if the jurors believed that the failure to reach Chicago in time for Monday's market was due to the fact that the cattle were unloaded by the Wabash Railway Company after they came into its custody, and were allowed to rest five hours, in order to comply with the provisions of section 4386 of the Revised Statutes of the United States. It will be observed that the defendant's instruction above quoted was framed upon the assumption that there was evidence from which the jurors might find that the cattle were not in fact delayed at Kansas City any longer than was necessary to comply with the federal statute, section 4386, supra. In point of fact, the evidence showed conclu-

sively that the cattle were detained in Kansas City from 7 a. m. until 6 p. m.,—about 11 hours,—while the statute only contemplated a detention of 5 hours. Besides, the cattle had been en route only 14 hours when they reached Kansas City, and they were loaded in cars in which they could be fed and watered without unloading. Nevertheless, through the fault or mistake of some one, they were not delivered to the Wabash Railway Company until about 7 hours after they arrived at Kansas City. It also appears that if they had been turned over to the Wabash Railway Company promptly on arrival, and had been immediately forwarded, they might have reached Chicago before the close of market hours on Monday, even if they had been unloaded for rest for some hours between Kansas City and Chicago. Under the circumstances, we think that the instruction above quoted was well calculated to mislead the jury, and that it was properly refused for that reason, if for no other. The judgment of the lower court will be affirmed.