## DAVIDSON S. S. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 7, 1905.)

No. 2,149.

1. TRIAL—RECEPTION OF EVIDENCE—SUFFICIENCY OF OBJECTION.

A trial court is justified in overruling an objection to a question, or to the evidence sought to be elicited thereby, when no ground is specified, or when the ground mentioned is so general in form as to be insufficient to direct attention to the particular defect or objectionable feature relied on.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 194–196.]

2. WITNESSES—EXAMINATION OF ADVERSE PARTY—CONSTRUCTION OF STATUTE.

Under Gen. St. Minn. 1894, § 5659, providing that a party may call and cross-examine an adverse party, or, if such adverse party is a corporation, then its directors, officers, superintendent, or managing agents, as construed by the Supreme Court of the state, the master of a vessel owned by a corporation, with authority to control and direct its movements between ports, is the managing agent of the corporation in respect to such duties, and may be called as an adverse party in a suit against the corporation growing out of the navigation of the vessel.

3. EVIDENCE—PRESUMPTIONS—MAILING AND DELIVERY OF MAIL.

Proof of the mailing to the master of a vessel navigating the Great Lakes, at a post office through which he admittedly received mail, of notices, is evidence of the due delivery of such notices, and a denial by the master of their receipt merely raises a question for determination by the jury.

4. WRIT OF ERROR—ASSIGNMENTS OF ERROR—DISREGARD OF RULES.

Assignments of error in the Circuit Court of Appeals on the admission of evidence will not be considered, where made in violation of rule 11, which requires each error asserted to be set out separately, and that the full substance of the evidence admitted shall be quoted, and where there is also a failure to refer the court in the briefs to the pages of the record relating to such evidence, as required by rule 24.

5. NEGLIGENCE—EVIDENCE TO ESTABLISH—PRECAUTIONS AGAINST RECURRENCE OF INJURY.

It is the settled doctrine of the courts of the United States that the taking of additional precautions after the occurrence of an accident is not evidence of want of care in the past.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, §§ 255, 256.]

6. SHIPPING—COLLISION OF VESSEL WITH BREAKWATER—NEGLIGENT NAVIGATION.

The use by the government of the United States of a white light to mark the location of the unfinished portion of a breakwater on the Great Lakes, in accordance with long custom, instead of a red light, such as was used to mark the position of finished structures, did not as matter of law exonerate the master of a vessel from the charge of negligent navigation in running his vessel upon the structure so marked, where it was shown that notices of the same were sent to all mariners on the Lakes, including such master, and that he ordinarily paid little or no attention to such notices.

In Error to the Circuit Court of the United States for the District of Minnesota.

This was an action by the United States against the Davidson Steamship· Company for damages to a breakwater at Agate Bay, Two Harbors, Minn., alleged to have been caused by the negligent management of a vessel of that company. At the mouth of the bay and as breakwaters for the harbor two· piers extend towards each other from the opposite shores. Between the ends of these breakwaters is the entrance to the harbor. Prior to the year 1900 the· one from the east shore ran westward into the lake for a distance of about 750 feet. At the time of the accident the government was engaged in extending it about 300 feet from the end of the old structure and at an angle of about 45· degrees. The work was but partially completed. In some places the super-structure was barely above the level of the water. For years the govern-ment had maintained as a warning at night a large red light near the outer· end of the old structure. During the work on the extension it had for a sim-ilar purpose also maintained at the extreme end thereof a white light, attached' to a mast about 14 feet above the water level. Between these two lights, a distance of 300 feet or more, was the unfinished work upon which the govern-ment was engaged. In the night of July 24, 1901, defendant's steamer Shenan-doah, John McAvoy, master, approached the harbor to gain admittance. The· weather was somewhat boisterous, with a heavy sea and a northeast wind blowing towards the shore. The master and crew of the vessel, being ignorant of the extension of the east breakwater, mistook the outer white signal for the· light of a vessel at anchor and the red light for the signal at the end of the· entire structure. The error was discovered too late to prevent a collision. The vessel struck against the cribs of the extension about 75 feet from the sea end of the old breakwater and inflicted the damage complained of. The gov-ernment claimed that the master of the vessel was negligent in not availing· himself of the usual source of information of government works in navigable· waters, which would have been sufficient in this case, and in disobeying the· signals which were maintained. The defendant contended that the master's ignorance of the new work was excusable and that the signals were insufficient and not such as should have been given. The trial, which was to a jury, re-·sulted in a verdict for the government, upon which judgment was rendered.

C. E. Kremer (H. R. Spencer, on the brief), for plaintiff in error.
Charles C. Houpt, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the· opinion of the court.

The government called McAvoy, the master of the vessel, for cross-·examination as an adverse witness, claiming authority to do so under a Minnesota statute which provides that a party to the record in a civil: action may so call and cross-examine an adverse party, or if such ad-verse party is a corporation then its "directors, officers, superintendent,. or managing agents" and that the party calling for such examina-tion shall not be concluded thereby but may rebut it by· counter tes-·timony. Gen. St. 1894, § 5659. Counsel for the defendant merely said: "We object to that." The objection was clearly insufficient. It has been held by this court many times that a trial court is justified' in overruling an objection to a question, or to the evidence sought to be elicited thereby, when no ground is specified, or when the ground: mentioned is so general in form as to be insufficient to direct attention, to the particular defect or objectionable feature relied on. Eli Mining & Land Co. v. Carleton, 108 Fed. 24, 47 C. C. A. 166; Rhodes v. United States, 79 Fed. 740, 25 C. C. A. 186; Minchen v. Hart, 72· Fed. 294, 18 C. C. A. 570; Missouri Pacific Ry. Co. v. Hall, 66 Fed.

868, 14 C. C. A. 153; Tabor v. Bank, 62 Fed. 383, 10 C. C. A. 429; Burlington Ins. Co. v. Miller, 60 Fed. 254, 8 C. C. A. 612; Railway Co. v. Hensen, 58 Fed. 531, 7 C. C. A. 349; Ward v. Mfg. Co., 56 Fed. 437, 5 C. C. A. 538; U. S. v. Shapleigh, 54 Fed. 126, 4 C. C. A. 237.

But, had the objection now urged been properly presented to the trial court, its action in overruling it would not have been erroneous. It is now contended that the master of the vessel was not a "superintendent or managing agent" of the steamship company within the meaning of the Minnesota statute. This question, being one of the construction of a local statute, has been set at rest by the decision of the Supreme Court of that state. Bennett v. Lumber Company, 77 Minn. 198, 79 N. W. 682. It was there said:

"The statute is a remedial one, and must be construed with reasonable liberality. To limit it, by construction, to the general officers of the corporation, as claimed by the defendant, would defeat the purpose of the statute; for, as a rule, such general officers have no personal knowledge as to what occurs in the actual work of the corporation. The statute includes any officer, superintendent, or agent having supervision or control of the work or act of the corporation involved in the case, whether his rank be that of a general officer or not."

It is true that in the case cited the witness called for cross-examination under the statute was the superintendent of a sawmill, while here the witness was a master of a vessel upon the waters. But, in applying a decision of the highest judicial tribunal of a state construing a local statute to cases involving rights or liabilities which have subsequently accrued, we should not halt at the strict letter of the decision for the purpose of indulging in technical distinctions, and then depart from the true logic and spirit thereof. It cannot be doubted that within the above construction of the statute a master in command of a vessel, with authority to control and direct its movements between ports, is, in respect of the performance of his duties, the managing agent of the corporation which employs him.

There were received in evidence, over defendant's objection, two marine notices sent from Washington, D. C., for distribution. One of them, dated July 29, 1899, related to the breakwater in question, and contained this information:

"The breakwater at the east side of the harbor is built to the length of 750 feet. The proposed extension of 250 feet in the same direction has been abandoned, and in its stead an extension at an angle of 45 degrees southward, 300 feet in length is proposed, making the entire length of this eastern breakwater 1,050 feet. This is also to be finished in the year 1900."

The other, dated August 11, 1900, related to the same improvement, and among other things recited:

"A communication from the contractor dated July 31, 1900, states that the submarine work on the extension of the east breakwater has now advanced so far as to leave only 16 feet of water over the embankment. Such a spot is located about 200 feet from the end of the old breakwater. Masters of vessels are therefore cautioned on entering the harbor to give the old breakwater a berth of 300 feet, and not to round the east breakwater close on board, as formerly, on account of this danger."

The only objection made at the trial was that knowledge of these notices was not brought home to McAvoy. The objection was not well founded. Witness Heinrich, who was in charge of the government's hydrographic office at Duluth, Minn., testified that it was his duty to send these and other such notices to the masters of steamships and sailing vessels in his district; that both McAvoy and the steamer Shenandoah were on his mailing list; and that he mailed both notices to McAvoy. He said that the notice of August 11, 1900, was mailed to him at Detroit, Mich., in care of the marine post office, and McAvoy himself testified that he received his mail there. The proof of the mailing of the first notice was not so definite. Heinrich testified positively that he mailed it to him, and, though he was not questioned as to the address, the reasonable inference from the testimony is that it also was sent to Detroit. But, aside from this, the notice of August 11, 1900, referred to the former one by number and year, and contained in itself substantially all the information that was material to the controversy. McAvoy denied their receipt, but he also said that whenever he passed Detroit, which he frequently did, the mail would be brought on board and delivered to him; that he had received notices to mariners nearly every time he passed Detroit, but he paid very little, if any, attention to them. He knew, however, that they contained official information of changes and the commencement and progress of government works in the harbors of the Great Lakes which he visited. The mailing of a letter or other communication, properly addressed and otherwise conforming to the postal laws and regulations, is evidence of the due delivery thereof. The denial by the addressee of its receipt is not conclusive. It merely raises a question for the determination of the jury. Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382, 28 L. Ed. 395; Henderson v. Coke Co., 140 U. S. 25, 37, 11 Sup. Ct. 691, 35 L. Ed. 332; Atherton v. Atherton, 181 U. S. 155, 181, 21 Sup. Ct. 544, 45 L. Ed. 794; Provident Savings Life Assurance Soc. v. Nixon, 73 Fed. 144, 148, 19 C. C. A. 414.

As to the contention now urged that the notices were immaterial, it may be said that they were intended to supplement the warnings afforded by the signals placed about the works, and were well calculated to attract and engage the attention of a prudent mariner.

It is also contended that the trial court erred in admitting in evidence Exhibits A and D. The former appears to be a chart or map of the locality of the collision. The latter is said in the brief of the company to be a pamphlet issued by the government. In the assignment of errors, Exhibit A and another exhibit are made the subject of one assignment. This is in violation of the provision of rule 11 of this court that each error asserted and intended to be urged "shall be set out separately." Again, the evidence alleged to have been erroneously admitted is merely referred to in the assignment of errors as Exhibits A and D. This is not a compliance with that provision of the same rule which requires that "the full substance of the evidence admitted" shall be quoted. It is also provided that "errors not assigned according to this rule will be disregarded." Again, by rule 24 counsel are required to make references in their briefs to the

pages of the record which they desire to have examined. But nowhere in the brief of the company is there a reference to the pages of the voluminous record before us where can be found the testimony concerning Exhibits A and D, what were the objections to their admission in evidence, what the rulings of the trial court thereon, and whether exceptions were taken to such rulings. Compliance with these rules is necessary to facilitate the business of the court, and it imposes no hardship upon counsel, whose participation in the trial, or in the preparation of the brief, or both, has made them familiar with the contents of the record. Attention has been called to these rules many times, and they have been frequently enforced, as they should be in this case.

The steamship company offered in evidence a notice to mariners, issued by the government about three months after the collision, which described the extension of the breakwater, and directed attention to the white light at the outer end thereof and the red light near the sea end of the old structure. · It was excluded by the trial court. It is claimed that it should have been received as "evidence of what the government should have done prior to the disaster." It is the settled doctrine of the courts of the United States that the taking of additional precautions after the occurrence of an accident is not evidence of want of care in the past. Columbia Railroad Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405; Southern Pacific Co. v. Hall, 100 Fed. 760, 41 C. C. A. 50; Motey v. Marble & Granite Co., 74 Fed. 155, 20 C. C. A. 366; Cincinnati, etc., R. Co. v. Van Horne, 69 Fed. 139, 16 C. C. A. 182; Barber Asphalt Pav. Co. v. Odasz, 60 Fed. 71, 8 C. C. A. 471; Atchison, etc., R. Co. v. Parker, 55 Fed. 595, 5 C. C. A. 220.

Finally, it is claimed that the white light displayed at the end of the new work was misleading, that a red light should have been used instead, and that there was not sufficient evidence to support the verdict. It did not appear, however, that there was any law, rule, or regulation which specified the particular kind of light to be used in such cases. There was substantial evidence tending to show that for many years it had been the custom to display white lights, not red ones, upon unfinished works in the harbors of the Great Lakes, and that McAvoy knew such works were constantly going on; that the lighthouse board, which maintained red lights as warnings and for the direction of mariners upon completed structures, did not have jurisdiction of works in process of construction; that McAvoy knew that he could easily procure, for the asking, official publications which gave accurate information to mariners regarding harbor works in the course of construction; that the government, not waiting for requests, was constantly endeavoring to convey such information to him and to others in like occupation for their safety and for the security of navigation; that some such publications had been sent to and had been received by him, advising him of the very structure he ran his vessel against, but that he paid no attention to them. We are unable to say that the deductions which the jury drew from this and other evidence in the case were not reasonable and well founded.

The judgment is affirmed.